UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD HANNABLE MCDUFF,                )
       Plaintiff,                                       )
                                                             )   No. 1:17-CV-912
v.                                                              )
                                                             )   HONORABLE PAUL L. MALONEY
BRENT ADDIS, ET AL.,                              )
       Defendants.                                   )
_____)

## OPINON

### I.   Background

State prisoner Richard McDuff filed suit under § 1983, claiming that Defendants Brent Addis, Jared Goodstrey, Shakia Davis, and Robert Dykstra were deliberately indifferent to the risk that he would be assaulted by other inmates.

Defendants filed a motion for summary judgment for Plaintiff's failure to exhaust his administrative remedies. The magistrate judge issued an R & R recommending that the motion be granted. The matter is now before the Court on Plaintiff's objections to the R & R.

The focus of the motion for summary judgment, the R & R, and Plaintiff's objections is Grievance No. MCF-2015-04-326-28C:

> MCF ADMINISTRATION HAS SHOWN WILLFUL AND DELIBERATE INDIFFERENCE TO MY LIFE AND PHYSICAL SAFETY. AFTER BEING ATTACKED BY TWO KNOWN GANG MEMBERS IN 4 UNIT BATHROOM WITH WEAPONS, MCF ADMINISTRATION NEVER QUESTIONED ME REGARDING MY SAFETY CONCERNS DESPITE THE FOLLOWING UNDISPUTED FACTS: 1) 4 UNIT CAMERAS SHOW ME ENTERING ITS UPSTAIRS BATHROOM WEARING FLIP FLOP SANDALS WHERE TWO KNOWN GANG MEMBERS RAN IN BEHIND ME THEN SWIFTLY LATER RAN OUT. 2) THE NOISE OF THE ATTACK BROUGHT

> OFFICER DYKSTRA RUNNING TO THE BATHROOM WHERE HE FOUND ME ALONE AND BLEEDING. 3) HE IDENTIFIED THE TWO GANG MEMBERS VIA VIDEO AND NO OTHER PERSONS HAVING BEEN IN THE AREA. UPON MY BEING TAKEN TO HEALTH CARE THE NURSE NOTED MY HEAD AND FACE HAD BEEN STRUCK NUMEROUS TIMES WITH WEAPONS THAT LEFT MULTIPLE PUNCTURE WOUNDS. IN ADDITION MY LEFT EARDRUM HAD BEEN RUPTURED. PLEASE NOTE HERE THAT OFFICER DYKSTRA WROTE ME A FIGHTING TICKET DESPITE NO EVIDENCE OF INJURY TO ANYONE BUT ME AS OUTLINED ABOVE. THE TICKET WAS THROWN OUT.
>
> ON THE DATE INDICATED ABOVE I WAS RELEASED FROM SEG WITH THE TWO GANG MEMBERS WHO ASSAULTED ME. RIGHT IN FRONT OF SEG THEY ATTACKED ME, AND AGAIN DESPITE NO INVESTIGATION I WAS WRITTEN ANOTHER FIGHTING MISCONDUCT. THIS LAST ATTACK COMPLETELY EXPLODED MY EARDRUM TO DATE NO ONE FROM MCF ADMINISTRATION HAS INTERVIEWED ME ONCE. I'M WRITING THIS GRIEVANCE IN ACCORDANCE TO PRISONER LITIGATION REFORM ACT FOR 14TH AMENDMENT VIOLATIONS.

(ECF No. 12-2, PageID.74).

The grievance was rejected at Step I for raising "multiple issues." (ECF No. 12-2 at PageID.75.) Plaintiff's Step II and Step III appeals were denied on findings that the Step I grievance was appropriately rejected based on Policy Directive 03.02.130, ¶ G. (*Id.* at PageIDs 71, 73.)

## II. Legal Framework

### A. Objections to Report and Recommendation

A district court judge reviews de novo the portions of the R & R to which objections have been filed. 28 U.S .C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Only those objections that are specific are entitled to a de novo review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir.1986) (per curiam) (holding the district court need not provide de novo

review where the objections are frivolous, conclusive, or too general because the burden is on the parties to "pinpoint those portions of the magistrate's report that the district court must specifically consider").

## B. Administrative Exhaustion

Prior to filing a civil lawsuit, a prisoner must first properly exhaust his available administrative remedies. 42 U.S.C. § 1997e(a); *Woodford*, 548 U.S. at 93. A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. See *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court. "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones v. Bock*, 549 U.S. 199, 204, (2007). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859–60 (2016).

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grieveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R. The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF. Relevant to this matter, Paragraph G warns prisoners that a grievance may be rejected "if it is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raises in another grievance . . . ." *Id.* at ¶ G(1).

## III. Discussion

The magistrate judge recommends granting the Defendants' motion for summary judgment because Plaintiff's grievance was rejected for procedural reasons at Step I. He concluded that Plaintiff had raised two attacks and two citations for fighting in his grievance, so rejecting it for raising multiple unrelated issues was reasonable. Plaintiff objects that his grievance did not raise multiple issues or in the alternative that the grievance process was unavailable. The Court will sustain Plaintiff's objection to the R & R's conclusion that he procedurally defaulted his grievance and reject the R & R.

MDOC policy prohibits only multiple *unrelated* issues from being raised in a single grievance. P.D. 03.02.130 ¶ G(1). A common sense understanding of the term unrelated means that the issues are "not connected in any way." *Unrelated*, MERRIAM-WEBSTER, available at https://www.merriam-webster.com/dictionary/unrelated (last updated June 30, 2018). The term is also commonly thought to mean "not connected or associated."

An issue is a "matter that is in dispute between two or more parties." *Issue*, MERRIAM-WEBSTER, available at https://www.merriam-webster.com/dictionary/issue (last updated June 30, 2018). It is synonymous with a concern or problem. *Id.*

The phrase "multiple unrelated issues" takes on its ordinary meaning in the Policy because it is not otherwise defined. Therefore, the Policy simply warns that inmates may have their grievance denied if they include multiple disputes, concerns, or problems that are "not connected or associated." P.D. 03.02.130 ¶ G(1).

As the Court reads Plaintiff's grievance, he raised four events pertaining to a single issue. First, Plaintiff very clearly stated the issue he intended to address with MDOC officials.

He wrote "MCF ADMINISTRATION HAS SHOWN WILLFUL AND DELIBERATE INDIFFERENCE TO MY LIFE AND PHYSICAL SAFETY."

Plaintiff continued, explaining how two alleged gang members attacked him in the bathroom, and that Defendant Dykstra discovered Plaintiff alone, bruised and bloodied in the aftermath. Dykstra responded by writing Plaintiff a misconduct for fighting—which was eventually dropped. Later, Plaintiff was released from "seg" *with* the gang members, who proceeded to assault him again. No investigation followed the second alleged attack. Plaintiff was issued a second misconduct for fighting.

These events are *clearly* related.

Moreover, the events stated in the grievance are *directly relevant* to a claim for deliberate indifference. The Eighth Amendment bars the "inflict[ion]" of "cruel and unusual punishments." U.S. Const. Amend. VIII. Prison officials are liable under the Eighth Amendment for failing to protect an inmate only if they act with "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Officials act with deliberate indifference if they know of a substantial risk to an inmate's safety, yet disregard that risk by failing to take reasonable measures to abate it. *Id.* at 837. Generally, a single isolated attack on an inmate cannot give rise to a deliberate indifference claim because the inmate will be unable to show that officials were consciously aware of the risk of an attack. *See, e.g., Lewis v. McLennan*, 7. F. App'x 373, 375 (6th Cir. 2001) (affirming dismissal of Eighth Amendment claim because the plaintiff had not alleged any specific facts which would show that he was in danger of being assaulted by other prisoners).

Here, Plaintiff may argue that the first attack resulted in some or all of the Defendants becoming subjectively aware of a substantial risk to his safety. Only then would the latter attack, perpetrated by the same offenders, give rise to a claim for deliberate indifference. The misconduct tickets are also relevant because they may be probative of a failure to take reasonable measures to abate the risk of substantial harm—especially since Plaintiff states that the first misconduct ticket was "thrown out." At the very least, the misconduct tickets are "connected" to the issue of deliberate indifference by MDOC employees; they stem from the very attacks giving rise to the claim.

Therefore, it was an unreasonable application of Policy Directive 03.02.130 ¶ G(1) to reject Plaintiff's grievance on the cited grounds.[1] This rendered the grievance process unavailable to Plaintiff. *See Ross*, 136 S. Ct. at 1859–60.

The Court reaches this result after consideration of *LaFountain v. Martin*. 334 F. App'x 738 (6th Cir. 2009) (per curiam). There, a prisoner filed multiple grievances alleging that an MDOC employee retaliated against him for having filed grievances by telling other prisoners that he was a snitch and sexual predator. *Id.* at 740. He also claimed that his cell was robbed and he had been accosted in the bathroom after the alleged retaliation. *Id.* MDOC officials rejected one of the grievances as raising multiple unrelated claims. *Id.*

---

[1] Notably, the Step I response does not assert that Plaintiff raised "unrelated" issues. In the one-sentence denial, the grievance coordinator stated that the reason for denying the grievance was "raising multiple issues." (ECF No. 12-2 at PageID.75.) Neither the Step II nor Step III appeal addressed the difference between "raising multiple issues" and "raising multiple *unrelated* issues." (*Id.* at PageID.71-75.)

7

The plaintiff then filed a complaint claiming a violation of the First Amendment. The magistrate judge recommended granting the subsequent motion for summary judgment for failure to exhaust. *Id.* at 739; *see also LaFountain v. Martin*, No. 07-cv-76, D.E. 35 (W.D. Mich. Feb. 2, 2008). The district court adopted the R & R.

On appeal, the Sixth Circuit found that "as a matter of law, [the relevant grievance] did not raise multiple unrelated issues." 334 F. App'x at 741. The court explained that the prisoner had raised one issue: "that [the employee] had retaliated against [him] for having filed grievances by labeling him a snitch and a sexual predator in order to motivate the other prisoners to take hostile action against him." *Id.* The results—being accosted in the bathroom and having his cell robbed—were "merely the harm he suffered as a result of the alleged retaliation."[2] *Id.* Accordingly, the *LaFountain* court found that the district court had erred in granting summary judgment on the basis of exhaustion, so it vacated the district court's order and remanded for further proceedings. *Id.* at 742.

Here, the same analysis largely holds. While the respective grievants may have raised more than one event to support their claim, they did not raise "multiple unrelated issues." Violations of constitutional rights come in many forms. Sometimes, the violation of a right becomes clear only after several events have transpired. A prisoner does not run afoul of

---

[2] The court also noted that the prisoner's complaint could be construed as a claim for deliberate indifference against the employee because "labeling an inmate a snitch satisfies the *Farmer* standard and constitutes deliberate indifference to the safety of that inmate." *See* 334 F. App'x at 742 (quoting *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001).

MDOC's "unrelated issue" rule by reporting facts that bear directly on or arise out of a single claimed constitutional violation.

If MDOC officials were allowed to construe Paragraph G(1) in this manner, litigating prisoners would be placed in a precarious position. It would force them to walk a tightrope—stating sufficient information in their grievance to receive a merits determination and qualify for exhaustion under ¶ R of the Policy,[3] while omitting everything else that MDOC officials could plausibly seize on to deem the grievance as raising multiple unrelated issues. While the MDOC has a strong interest in procedural rules that promote efficient administration of its facilities, a too-broad application of Paragraph G(1) appears designed to bar all but the most artfully drafted grievances from receiving a decision on the merits. In that case, administrative relief is deemed unavailable. *See Ross*, 136 S. Ct. at 1860 (stating that exhaustion will not bar an inmate's claim where "officials . . . devise procedural systems . . . in order to 'trip up all but the most skillful prisoners.'" (quoting *Woodford*, 548 U.S. at 102)).

IV. Conclusion

The Court concludes that MDOC officials applied Policy Directive 03.02.130 ¶ G(1) in an unreasonable manner when it concluded that Plaintiff had raised multiple unrelated issues. Because MDOC officials applied their Policy unreasonably, they rendered an

---

[3] "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." P.D. 03.02.130, ¶ R.

administrative remedy unavailable. Thus, the Court concludes that the Defendants are not entitled to summary judgment solely on the basis of exhaustion.

## ORDER

As thoroughly explained in the accompanying opinion, the Court **REJECTS** the Report and Recommendation. (ECF No. 16.)

Plaintiff's objections (ECF No. 17) to the R & R are **SUSTAINED**.

Defendants' motion (ECF No. 11) for summary judgment based on a failure to exhaust is **DENIED.**

**IT IS SO ORDERED.**

Date: July 3, 2018 /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge